Commonwealth *v.* Sladko, Appellant.

Argued December 9, 1938. Before KEPHART, C. J.,
SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Lemuel B. Schofield,* for appellant.

*Abraham Berkowitz,* Assistant District Attorney, with him *Charles F. Kelley,* District Attorney, for appellee.

OPINION BY MR. JUSTICE DREW, January 9, 1939:

This is an appeal from the judgment and sentence of the Court of Oyer and Terminer of the County of Philadelphia entered upon a verdict of murder in the first degree with the penalty fixed at life imprisonment.

At approximately 7:00 p. m. on February 10, 1934, Morris Speigel was shot and killed while dining in a restaurant located at the northwest corner of Seventh and Shunk Streets, in Philadelphia. His assailant entered the restaurant, approached the open booth in which Speigel was seated with his back to the door, and fired three shots close to defendant, two of which entered Speigel's head, the third taking effect in his body.

The defendant, William Sladko, who knew the deceased for a number of years, was well known to the restaurant owner, Morris Weiss, his wife, Sylvia Weiss, and to their cook, Marie Winston. He had been a customer for his meals at the restaurant for six or seven months, and was intimately known to them as "Slats."

The cook testified that she had served him his breakfast of two raw eggs and milk every morning for about six months.

On the evening of the shooting the defendant entered the restaurant while Mrs. Weiss was seated about four feet from the open booth where Morris Speigel was eating his dinner. She was in a position to see Speigel and Sladko, the defendant. At about the moment the last shot was fired she screamed, "Slats, you killed Speigel. Slats killed Speigel. Slats killed him." Simultaneously with her screams, Marie Winston, working in the adjoining kitchen, heard her screams through the open door, and saw Sladko running towards the kitchen, facing her, with his coat over his arm. She saw him pass her and go out the kitchen door to the street, where he disappeared. She said she only heard two shots; that she heard Mrs. Weiss scream, "Slats, you done shot George Speigel." From the witness box she positively identified the defendant as the man "that ran out there that night."

Sylvia Weiss, the eyewitness, testified that she was four or five feet from Speigel when defendant entered the restaurant and fired the shots. She said she was acquainted with Sladko, who was a frequent customer in her restaurant. She further testified that Speigel was in the restaurant from fifteen to twenty minutes when the defendant entered, walked past her and stood in front of Speigel. She testified that after she heard one shot fired, she looked where the noise came from and saw fire and flame coming out of a revolver, and that she then screamed, "that he killed him, something like that." She said that she had seen Speigel and defendant together prior to the time of the killing. In court she positively identified Sladko as the man who did the shooting.

The defendant testified that he fled to New York on the night of the murder, and remained in hiding there under the name of Albert Baker for more than three years. Having been arrested on a minor charge, his

4

identity was discovered and he was returned to Philadelphia.

Soon after the murder, in fact the same night, Sylvia Weiss identified a photograph of the defendant, in the detective bureau, as the man who committed the murder, and signed her name on the back of the photograph. That photograph she again identified in court.

The principal witnesses for the defense were the defendant and one, Herman Comers. The defendant admitted that he was present in the restaurant at the time of the killing. He said he knew Speigel for fifteen years and denied having shot him. He said he had just entered the restaurant and removed his coat and was still on his feet when he saw another man enter the same door immediately behind him. He said that when he saw a pistol in the latter's hand, he, the defendant, ran through the restaurant and out the side door. He claimed to have heard only the report of one shot. He testified that there were two men in the first booth, that he did not recognize the one who had his back to him, but that he recognized Herman Comers, the man who faced him. He said he returned to his home, and then departed by bus for New York, because he did not want to be involved in anything. He asserted that prior to his arrest he did not know that he was being sought by the police. He said that he took the name of Baker in New York because he "had a past and wanted to live it down."

Comers testified that he was an eyewitness to the shooting. He said that Speigel sat opposite him in the first booth; that they were engaged in conversation when somebody came in and shot Speigel. He testified he saw the man who did the shooting, and that it was not the defendant, whom he had known for ten or twelve years. He said that the defendant was not in the restaurant at that time.

Comers testified that he spoke to no one in authority concerning the shooting, and that the first time he spoke to anybody "that had anything to do with the case" was

when he came to defense counsel's office on Tuesday afternoon, February 15, 1938, when the case was on trial.

For almost four years after the murder Comers was not known in the case at all, and was never mentioned by the witnesses in any statements to the police. His testimony was evasive and his recollection was faulty. It is not surprising that the jury disbelieved him, because, in spite of the fact that the defendant himself admitted that he was in the restaurant at the time of the shooting, Comers testified flatly that the defendant was not there at that time.

The jury had before them the record of the defendant for violence in the County of Luzerne, showing that he had entered a plea of guilty to the crime of robbery at the point of a pistol, and carrying concealed deadly weapons. The bill of indictment attached to the record recited that he entered a restaurant in Plymouth Borough on July 30, 1930, at 1:00 a. m. and robbed Paul Dunn of about $575 at the point of a pistol. He was sentenced to the Luzerne County prison for from two to four years.

The reasons assigned in support of the appeal are: (a) the trial court erred in refusing to permit the defendant the right of further cross-examination of the witness, Sylvia Weiss, and (b) the trial court erred in disregarding the affidavit of Sylvia Weiss and refusing to include the same in the record.

The learned trial judge permitted the witness, Sylvia Weiss, who was suffering from a cold, to leave the court room when defendant's counsel had no further questions to ask her. She had then been examined at length by counsel for the defendant, her testimony on cross-examination covering fifty-six pages of the typewritten record. As the learned judge in his opinion stated, before the conclusion of the cross-examination, "The defendant's counsel asked for recess in order to confer with the defendant." The court granted the request for recess, but

6

would not permit the witness to leave the stand, until both sides had finished with her. Nevertheless, at the conclusion of her testimony, counsel for the defense asked the witness to remain in the court room, whereupon the court asked counsel whether or not he had finished his cross-examination of this witness. The defendant's attorney replied that "at the present time I am finished but do not know what is going to develop." The court then permitted the witness to go home.

At the close of the Commonwealth's testimony counsel for the defendant made a request for leave to further cross-examine the witness, Sylvia Weiss, because of an alleged contradiction of a part of her testimony by her husband, Morris Weiss, to the effect that another man had been in the restaurant shortly before and after the shooting. The request was refused, and properly so, because there was no conflict in this respect, or in any other, between the testimony of Sylvia and Morris Weiss. She had not testified concerning another man in the restaurant before or after the murder. Her testimony that she was the only eyewitness to the slaying was not contradicted by her husband, who was admittedly not in the restaurant at the time of the murder but returned there shortly thereafter.

The Commonwealth called Marie Winston in rebuttal to establish that Comers was not in the restaurant at the time of the shooting and that he was not a customer of the restaurant, and then counsel for the defense requested that Mrs. Weiss be recalled as best qualified to testify on this point. She was not called. Counsel was offered an opportunity to subpœna her, which he did not do. The learned trial judge exercised his discretion in refusing to send for Mrs. Weiss and place her again upon the stand. Under the circumstances, we cannot say that this was error. Counsel had full opportunity to examine her, and he did examine her at great length, after which she was excused. If this were all we would probably hold that she should have been recalled so that

counsel could have an additional opportunity to press her as to whether or not any other person, particularly Comers, was in the restaurant at the time of the crime. Comers testified to his presence there after Mrs. Weiss had left the stand. But in our mind the determining factor is that defendant's counsel knew on Tuesday, February 15, 1938, two whole days prior to the time when Mrs. Weiss took the stand, that Comers was going to testify to his alleged presence in the restaurant when the murder occurred. It was at that time that Comers visited him in his office. During the trial, when counsel was cross-examining Morris Weiss, he had Comers stand up in the court room for the purpose of identification. When Mrs. Weiss was on the stand he could have done the same with regard to her, because he then knew that the testimony that Comers was to give was contradicted by her testimony that she alone was an eyewitness to the killing. The failure of defendant's counsel to exercise his right of cross-examination at that time, especially when the court pressed him to conclude with the witness before she was permitted to leave the stand, made it proper for the trial court in the exercise of its discretion to refuse to recall her. It may very well be that the trial judge had an excellent reason for wishing the testimony of this witness concluded before she left the stand. The only plausible explanation for not questioning Mrs. Weiss concerning the alleged presence of Comers is that she would then have adhered to the same answers which she gave previously, to the effect that only Speigel, Sladko and herself were present at the time of the murder.

Even if Mrs. Weiss had admitted that Comers was present, her testimony was still most positive and definite that defendant did the actual shooting. The evidence could not affect the main issue, and, even if it contradicted it in some minor parts, a new trial should be refused. Under these circumstances, it cannot be fairly said that the defendant suffered any prejudice as the re-

sult of the action of the trial court. Defendant is not entitled to a new trial in the absence of any explanation of his failure to take advantage of the previous opportunity given: *Commonwealth v. Carter*, 272 Pa. 551.

On May 10, 1938, about three months after the close of the trial, Sylvia Weiss signed an ex parte affidavit to the effect that Comers was in the restaurant at the time of the shooting. She stated that after she had been visited by the mother of the defendant, she went voluntarily to the office of counsel for the defendant to make the affidavit. In dismissing the motion for a new trial the lower court said regarding this affidavit: "Further evidence in regard to who was in the restaurant would be cumulative and would have no apparent effect on the verdict. Such after-discovered evidence is not grounds for a new trial: *Com. v. Carter*, 272 Pa. Sup. 551, 554." However, since counsel had a full and fair opportunity to examine her upon this very point while she was on the stand, because he had full knowledge at that time of what Comers would testify to, and because he could have actually confronted her with Comers who was in court at the time, defendant cannot now be heard to raise this question. Under the circumstances, we think the action of the lower court in refusing to accept the affidavit and include it in the record was proper. We are certain that no prejudice resulted to the defendant from the refusal of the court to recall the witness or accept her affidavit. The record conclusively shows that the defendant is guilty as indicted. It would be difficult to find a reasonable explanation for the action of the jury in recommending the penalty of life imprisonment for such a cruel and cowardly assassination.

The assignments are overruled; the judgment and sentence of the court below is affirmed.